**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| CLIFTON MASSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:03-cv-1531-DFH-TAB |
| ) | |
| L. HOBSON, ) | |
| LT. BOWSEN, ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

Through the court's Entry of February 4, 2005, summary judgment was entered in favor of the defendants as to all claims except the claims that defendant Lisa Hobson opened plaintiff Clifton Massey's legal mail on August 17, 2003, and confiscated a legal book and other legal documents belonging to Massey. Hobson now seeks resolution of these remaining claims through the entry of summary judgment.[1]

For the reasons explained in this Entry, the motion for summary judgment filed by defendant Hobson on May 19, 2005, must be **granted** and Massey's cross-motion for partial summary judgment, filed on July 18, 2005, must be **denied.**

**I. Summary Judgment Standard**

Summary judgment is proper when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Scott v. Trump Ind., Inc.,* 337 F.3d 939, 945 (7th Cir. 2003). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [nonmovant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Judgment as a matter of law is appropriate when a party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

---

[1] Massey seeks to proceed with his claim that Hobson punished and retaliated against him for having filed grievances against her, but that claim was dismissed through the entry of summary judgment for failure to exhaust administrative remedies. Massey's argument that exhaustion of administrative remedies is not required for § 1983 claims is meritless under current law. 42 U.S.C. § 1997e(a). Such claim will not be discussed further in this Entry.

## II.  Undisputed Facts and Conclusions of Law

### A.  Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the motion for summary judgment:

Massey was confined at the Reception Diagnostic Center ("RDC") in July and August of 2003.  At all relevant times, Hobson was employed by the Indiana Department of Correction as a grievance specialist.  Hobson was also assigned to handle legal mail within the RDC.

An offender at the RDC who is indigent and desires to send out legal mail must first receive approval from the individual assigned to handle legal mail. Once the approval is given, the mail is then sent to the mailroom. To ensure that it is legal mail, the contents of the document or correspondence are scanned, but not read.

During the middle of August 2003, Massey sent to the mailroom sealed legal mail which had not been approved by officers at the RDC.  The letter was addressed to Laura Briggs, Clerk of the United States District Court, Southern District of Indiana. Hobson picked up the sealed letter and brought it to Massey to explain the proper procedure.  Hobson opened the sealed letter in front of Massey and scanned the document to ensure that it was legal mail.

Hobson was later contacted by the mailroom regarding legal mail that was addressed to a woman in Evansville.  Hobson retrieved the letter and found that it was from Massey's cellmate, addressed to the cellmate's girlfriend.  Hobson questioned Massey and his cellmate regarding the letter and Massey stated that he had given the envelope to his cellmate.  Hobson again instructed Massey regarding the proper procedures for submitting legal mail and warned him regarding his abuse of legal mail envelopes.  Hobson returned the correspondence to allow Massey's cellmate to mail it through the appropriate process.

On or about August 28, 2003, Hobson was instructed to search Massey's cell and property and to confiscate his legal mail envelopes based upon his abuse of the envelopes.  An offender is allowed only two manila envelopes of legal work within his cell at the RDC.  An offender is not allowed to possess legal books in the housing units at the RDC.

Before Hobson began the search, she asked Massey if he had any envelopes marked "RDC law library."  Massey stated that he had sent the last three envelopes marked "RDC law library" to Hobson.  During the search Hobson found three or four envelopes marked "RDC law library," six manila envelopes of legal work and one law book. Hobson confiscated the unauthorized property and took Massey to the intake area.  Sergeant Dwyer went through the property and returned any authorized property to Massey. Massey was allowed to place all of his legal papers in two manila envelopes. The remaining property was boxed and sent to Massey's home at his request.

### B. Conclusions of Law

**1. *Denial of Access Claim***

Massey asserts that Hobson interfered with his access to the courts. He states that Hobson refused to mail two pieces of legal mail in August of 2003.

Massey states that in mid-August 2003, Hobson refused to mail the letter to the clerk of this court "requesting legal documents." In her affidavit, Hobson does not state one way or the other whether she allowed the letter to be mailed, although she "denies" this allegation in her brief in response to Massey's cross-motion. In *Lewis v. Casey,* 518 U.S. 343, 351-57 (1996), the Supreme Court explained that an inmate alleging denial of access to the courts lacks even the standing to assert such a claim in the absence of actual injury, which means an adverse decision in, or inability to litigate, some concrete legal claim. By virtue of this lawsuit having been timely filed on October 17, 2003, it is clear that even if the letter to the clerk requesting certain unspecified documents was not sent, Massey's access to the court in this case was not impeded by Hobson.

Massey argues that Hobson refused to mail legal mail in late August 2003 to the Northern District of Indiana in a habeas corpus case, *Massey v. Herman*, 3:03-cv-0504-AS-CAN. He alleges that the mail that was not filed was a report of a change of address, which caused him to miss an important deadline. The evidence of record reflects otherwise. Massey filed motions and notices in the habeas case during the time period asserted, specifically on August 5, 2003, August 19, 2003, and September 11, 2003. The August 19 and the September 11 filings were, in fact, reports of a change of address. Moreover, the respondent did not file his response to the order to show cause until October 1, 2003. There was no deadline for Massey to meet prior to the respondent's filing. The case was dismissed on November 26, 2003, for failure to exhaust available state remedies. Massey did not miss any August deadline in that case. Hobson is entitled to summary judgment as to Massey's denial of access claim.

**2. *Mail Censorship Claim***

Massey also alleges that Hobson read his legal mail in violation of the First Amendment. Hobson states under oath that she opened and scanned the letter in Massey's presence to ensure that it was legal mail, but that she did not read it. This procedure has been approved by the Supreme Court. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (prison officials may inspect but not read a prisoner's legal mail from attorneys, but only in the presence of the prisoner). Although Massey contends in his affidavit that Hobson read the letter, he does not state how he can have personal knowledge that Hobson read, as opposed to scanned or inspected, the letter.[2]

---

[2] In any event, the letter requesting unspecified documents from the clerk of the court might not be considered "legal" mail. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir. 1996) ("prison employees can open official mail sent by a court clerk to an inmate without infringing on any privacy right."); *Martin v. Brewer*, 830 F.2d 76, 78-79 (7th Cir. 1987) (discussing in *dicta* whether correspondence from a court to a litigant

3

Massey's claim implicates the principle of *Turner v. Safley*, 482 U.S. 78, 89 (1987), which is that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Here, the RDC policy permits outgoing legal mail to be scanned, not read, to ensure that improper correspondence or contraband is not being sent out of the facility under the guise of legal mail. The policy of inspecting outgoing legal mail is reasonably related to the legitimate penological interest of safety and security of the prison.

Contrary to RDC policy, Massey sealed the letter before it was sent to the mailroom. This prompted the investigation by Hobson to ensure that the envelope did contain legal documents. Even if Massey is correct that Hobson read, as opposed to inspected, the letter to the court, the Seventh Circuit has emphasized the importance of repeated infractions on the part of prison mailrooms before finding a constitutional violation. *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304 (7th Cir. 1993)(ongoing interference with legal mail, rather than isolated incident, sufficient to state a First Amendment claim); see also *also Zimmerman v. Tribble*, 226 F.3d 568, 572-73 (7th Cir. 2000) (upholding dismissal where appellant alleged only one incident of untimely delivered non-legal mail). No rational trier of fact could find that this single incident violated Massey's First Amendment rights.

### 3. Deprivation of Property Claim

Massey alleges that Hobson unlawfully confiscated a legal book and other property from his cell in violation of his due process rights. As a general rule, the Constitution requires some type of hearing before an individual can be deprived of life, liberty, or property by a government official acting under color of state law. *Zinermon v. Burch,* 494 U.S. 113, 127 (1990). Under certain circumstances, however, "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128. Specifically, an intentional and unauthorized deprivation of property by a state employee "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *see also Easter House v. Felder,* 910 F.2d 1387 (7th Cir. 1990).

That is the case here, where Massey could have pursued at least the remedies of (a) an action for conversion and/or theft under Indiana law, and (b) a claim against Hobson under Indiana's Tort Claims Act (IND. CODE § 34-13-3-1 *et seq.*). *Wynn v. Southward,* 251 F.3d 588, 592-93 (7th Cir. 2001) ("Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due.") (citing *Wilson v. Civil Town of Clayton, Indiana,* 839 F.2d 375, 383 (7th Cir. 1988) (holding that Indiana Tort Claims Act provides prisoners with adequate post-deprivation remedies for lost property); *Hossman v. Spradlin*, 812 F.2d 1019, 1023 (7th Cir. 1987). Whether Massey used either of these

---

should not be regarded as privileged because with few exceptions it would be a public document ). Massey does not identify the "legal documents" he requested in the letter. Certainly the letter was not correspondence with an attorney. Because the parties have treated the letter as "legal" mail, however, for purposes of this motion the court will assume that the letter to the clerk of the court was "legal" mail.

remedies, and if he did so whether the remedy proved effective for his purpose is not decisive in determining whether a procedure exists and whether it is constitutionally meaningful.

Massey further argues in conclusory fashion that his substantive due process rights were violated by the confiscation of his property. To support a substantive due process claim, Massey must present evidence showing egregious misconduct on the part of Hobson. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (affirming that the substantive due process standard is conduct that shocks the conscience); *Armstrong v. Squadrito*, 152 F.3d 564, 576-77 (7th Cir. 1998) (noting that the deliberate indifference, or conscious disregard for known or obvious dangers, standard may apply under Fourteenth Amendment where officials have the luxury of forethought). The property that was confiscated from Massey's cell was not destroyed. Rather, it was sent to his home. The property was not authorized to be possessed by Massey in his cell. The record shows that none of Hobson's conduct in confiscating such property reached the required level of culpability. Under these circumstances, there was no due process violation.

### III.  Conclusion

Massey has not identified triable issues of fact in support of the claims he asserts against defendant Hobson. Accordingly, the motion for summary judgment filed on May 19, 2005, by defendant Hobson is **granted.**  The motion for counter-claim for plaintiff partial summary judgment on claims remaining after order of February 4, 2005, filed by Massey on July 18, 2005, is **denied.** Any other pending motions are denied as moot. Final judgment consistent with this Entry and with the Entry of February 4, 2005, granting partial summary judgment, shall now issue.

So ordered.

*[Signature: David F. Hamilton]*

DAVID F. HAMILTON, Judge
United States District Court

Date:   9/28/2005